622 So.2d 1226 (1993)
Roy H. CROW
v.
Lynette CROW.
No. 91-CA-1049.
Supreme Court of Mississippi.
June 3, 1993.
Rehearing Denied September 23, 1993.
*1227 Charles R. Wilbanks, Corinth, for appellant.
Thomas H. Comer, Jr., Comer & Jenkins, Booneville, for appellee.
Before PRATHER, P.J., and SULLIVAN and PITTMAN, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION

STATEMENT OF THE CASE
This domestic relations appeal, which had its genesis in the filing by the wife of a "Complaint for Citation of Contempt," seeks reversal of the chancellor's finding of fact that Roy H. Crow was in arrears in child support payments in the amount of $5,640.00. The chancellor entered a decree adjudicating that husband was in arrears, but not in willful contempt. The husband also seeks reversal of the chancellor's denial of certain credits and denial of the husband's counterclaim seeking emancipation and relief from basic support of his twenty-one (21) year old daughter.

II. FACTS

STATEMENT OF THE FACTS
Appellant, Roy H. Crow [hereinafter "Roy"] and Lynette Crow [hereinafter "Lynette"] were married on October 14, 1966. They separated on December 31, 1989.
The parties had filed a joint complaint for divorce on February 6, 1990. A four (4) page stipulation and separation agreement executed by both parties and attached to their complaint granted to Lynette custody of the couple's two minor children, Karen Crow and Tina Crow, then seventeen (17) and nineteen (19) years of age, respectively.
In the separation agreement, which was incorporated into the final judgment of divorce, Roy agreed to pay "to the Wife ..." the sum of $600.00 per month for the support of Karen and Tina and all reasonable college expenses.
The agreement further provided that Roy would convey to Lynette the titles to the Z-28 automobile and the 1983 Blazer automobile, would assume and make monthly payments to the Peoples Bank for the indebtedness on the 1983 Blazer, and would indemnify and hold Lynette harmless from said indebtedness. Roy further agreed to pay for health insurance and medical, dental, and drug expenses not covered by said insurance. A final decree of divorce awarded on the grounds of irreconcilable differences was entered on April 13, 1990, by the Chancery Court of Alcorn County.
On May 14, 1991, thirteen months after the divorce, Lynette filed her complaint for citation of contempt alleging inter alia, that Roy had failed to pay all of the child support required of him and had not conveyed his interest in and title to plaintiff's automobile. Lynette prayed for a judgment against Roy "for all sums due" and asked that Roy be required to execute all documents necessary to abide by the orders issued by the Court.
Roy answered with a general denial. Roy also filed a counterclaim in which he alleged there had been a material and substantial change in the circumstances since the rendition of the divorce decree. Roy sought certain credits and a declaration that Tina Crow had been emancipated upon reaching her twenty-first birthday in February, 1991.
Following trial the chancellor declined to hold Roy in contempt, but found him in arrears. The court found as a fact from the testimony of the parties that during the sixteen (16) month period of time between the divorce awarded on April 13, 1990, and August 31, 1991, Roy should have paid child support to Lynette in the amount of $9,600.00. The chancellor gave Roy credit for checks written directly to Tina and Karen totaling $3,410.00, for a $150.00 check written on Roy's business account, and for a $400.00 check written by Lynette for automobile repairs. Roy's total credit was *1228 $3,960.00, and his total arrearage as of August 31, 1991, was $5,640.00 which amount was awarded to Lynette. Roy was directed to replace the Blazer automobile, which had been wrecked, by paying to Lynette the sum of $4000.00 in insurance proceeds that Roy had received and used to pay off the bank lien.
The chancellor declined to give Roy credit for certain utility bills voluntarily paid by Roy and denied Roy's counterclaim for modification of child support sought on the ground that Tina had been emancipated.

III. ANALYSIS

DISCUSSION

A. Scope of Review
Our scope of review in domestic relations matters is limited. "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Bell v. Parker, 563 So.2d 594, 596-97 (Miss. 1990).
In other words, "[o]n appeal [we are] required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." Newsom v. Newsom, 557 So.2d 511, 514 (Miss. 1990). This is particularly true "in the areas of divorce and child support." Nichols v. Tedder, 547 So.2d 766, 781 (Miss. 1989).

B. Child Support
Roy contends he clearly established by a preponderance of the evidence he had paid the child support and was not in arrears. Lynette, on the other hand, denies this allegation.
Under the terms of the decree of divorce, Roy was to pay directly to Lynette the sum of $600.00 a month for the support and maintenance of the two children. Lynette testified that although Roy had paid nothing to her directly, he had paid around $4000.00 to the children in both checks and cash, and she was willing to give him credit for this amount. While admitting that Roy had made payments with both checks and cash, she denied he had made sizable support payments in cash. Lynette, much like Roy, kept no records.
Roy testified that since the divorce he had written checks to both Tina and Karen in the amount of $150.00 every other week save for a period of three or four weeks when Lynette came into possession of a business check which she later returned. Lynette emphatically denied this was the only occasion that Roy had missed a payment.
Roy produced cancelled checks attesting to payments made to the children in the amount of $3,410.00. He claimed he had paid everything they needed for college, but he didn't know the amount.
In the final analysis, Roy kept no records, obtained no receipts, and had no idea as to the amount of money he had paid for regular child support which had been intermingled with other payments for care and maintenance such as college and health related expenses. It is difficult to ascertain the accuracy of Roy's claim that he paid $6000.00 in cash to his children, a great deal of which was purportedly placed inside a mailbox. The chancellor found the amount of child support due from April 13, 1990, (the date of the divorce) to August 31, 1991, (the month prior to trial) to be $9,600.00. Elementary math points to the correctness of this finding of fact ($600.00 X 16 months = $9,600.00). The credit of $3,960 given by the chancellor left the balance due of $5,640, which amount was awarded to Lynette.
Whether Roy was in arrears and the amount of any arrearage involved questions of fact. "[T]he findings of the chancery court concerning findings of fact, particularly in the areas of divorce and child support, will generally not be overturned by this Court on appeal unless they are manifestly wrong." Nichols v. Tedder, supra, 547 So.2d 766, 781 (Miss. 1989), and the cases cited therein. These fact-findings are the equivalent of a jury's verdict upon conflicting evidence. Voss v. Stewart, 420 So.2d 761 (Miss. 1982).
Stated differently, unless the chancellor committed manifest error, we will not reverse *1229 a chancellor's findings of fact where we find those facts supported by substantial credible evidence in the record. Morrow v. Morrow, 591 So.2d 829, 832-833 (Miss. 1991). "Where evidence conflicts, ... this Court typically defers to the chancellor as fact-finder." McElhaney v. City of Horn Lake, 501 So.2d 401, 403 (Miss. 1987).
In the case sub judice, the chancellor, based upon his observation of the witnesses and their testimony, much of which was conflicting, made a finding of fact from the proof that Roy was in arrears in the amount of $5,640.00. This Court holds the record supports his finding and is not manifestly wrong. "The credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts." Rainey v. Rainey, 205 So.2d 514, 515 (Miss. 1967).
The memo line on several of the $150.00 checks made out by Roy to his daughters, Karen and Tina, contained notations such as: "labor at mill," "labor," "secretary fee," and "maid work." At one point Roy testified the girls made these notations; at still another he testified he made the notations. Notations notwithstanding, Roy was given credit for these checks. Although Roy denied he was disguising some of his child support payments for the purpose of deducting these amounts as business expenses on his income tax, these observations, nevertheless, would seem to reflect unfavorably upon Roy's credibility.
Even if Lynette's figures as to the amount of the arrearages was vague and imprecise, we will not hold the chancellor in error where, as here, there was no other direct evidence as to the amount due. Brown v. Gillespie, 465 So.2d 1046, 1047 (Miss. 1985). The issue was a factual one which will not be disturbed since it was not manifestly wrong.

C. The Emancipation of Tina
Tina turned twenty-one (21) in February of 1991, ten (10) months after entry of the final judgment of divorce. Roy contends he was not legally obligated to pay child support for Tina post-majority and that the chancellor should have granted the request contained in his counterclaim to "declare that Tina Crow has been emancipated and that no further support is due from the counter-defendant for the said Tina Crow."
Although not alleged in his counterclaim and sought by Roy during trial, Roy claims on appeal he is entitled to credit for $300.00 per month. Roy suggests this is Tina's pro rata share of $600.00.
In the final decree of divorce entered on April 13, 1990, Roy was ordered to pay to Lynette the sum of $600.00 per month for the support and maintenance of the two minor children and to pay for all reasonable college expenses of Tina Crow and also for Karen Crow at such time as Karen entered college. Roy had agreed in the separation agreement to pay all reasonable college expenses for both Tina and Karen, hazard insurance and property taxes on the marital home until both girls finished college, and automobile insurance and tags on the Blazer and Z-28 while his daughters were enrolled in college. These provisions were made a part and parcel of the "Final Judgment of Divorce."
The chancellor rejected this claim and observed "... that as long as a child is in college it's still considered to be under the support requirement. * * * [A]s long as she's in school, it's my opinion that the child support still applies."
This Court holds the chancellor implicitly, if not directly, concluded that college expenses were but one form of child support and that Roy was obligated by the terms of his contract to pay post-emancipation child support in the form of college expenses for both Tina and Karen. Roy, likewise, contracted to pay taxes and insurance on the marital home and to pay the expense of car tags and liability insurance during the period of time one or both of the girls were enrolled in college. Accordingly, the chancellor was not manifestly wrong in declining *1230 to emancipate Tina and disturb the $600.00 support requirement.
A parent is relieved of the legal duty to support his child once the child is emancipated whether by attaining the age of majority or otherwise. Pearson v. Hatcher, 279 So.2d 654, 656 (Miss. 1973); Pass v. Pass, 238 Miss. 449, 118 So.2d 769, 771 (Miss. 1960). Twenty-one (21) years is the age of majority in this State for purposes of child care and maintenance orders issued pursuant to Miss. Code Ann. §§ 93-5-23 and 93-11-65. Nichols v. Tedder, supra, 547 So.2d 766 (Miss. 1989). A trial court "ha[s] no authority to order child support in any form, whether regular, college expenses, or otherwise, to continue in effect post-majority." Stokes v. Maris, 596 So.2d 879, 882 (Miss. 1992).
Although Nichols v. Tedder, supra, held that child support obligations terminate when the child is emancipated either by reaching age 21 or otherwise, the same case also observed that agreements between the parties providing for post-emancipation care and maintenance are enforceable.
[N]othing we have said should be interpreted as foreclosing the enforceability of agreements by the parties providing for the post-emancipation care and maintenance of their children, whether those agreements are separate contracts, or have been incorporated into the divorce decree. 547 So.2d at 770.
The Tedder case points out the real distinction between "regular child support" and other types of payments for which a parent may become obligated under the terms of a valid child care and maintenance order. Tedder stands for the proposition that within the context of child care and maintenance orders, "regular child support" refers to the sums of money which a parent is ordered to pay for the child's basic, necessary living expenses, namely food, clothing, and shelter. Other sums which a parent may be ordered to pay pursuant to valid child care and maintenance orders are the expenses of a college education, health-related and insurance expenses.
In the case sub judice, Roy, at the time of trial on September 13, 1991, was under a court ordered obligation incurred on April 13, 1990, by virtue of his contractual consent to pay (1) $600.00 for the support and maintenance of Tina and Karen, both minors; (2) all of the reasonable expenses of Tina's college education as well as Karen's college education at such time as she entered college; (3) all hazard insurance and property taxes on the marital home until such time as both Tina and Karen finished college, and (4) automobile tags and collision and liability insurance on the Blazer and Z-28 automobiles during the time that both children are enrolled in college. As noted, Roy and Lynette had entered into a "Stipulation and Agreement" specifically contracting for this particular support. Such was incorporated into the divorce decree which ordered compliance with these provisions.
This Court holds that where, as here, Roy contracted to pay post-emancipation support in the form of college and other expenses, he is bound by his contract. In addition, such was neither requested in Roy's counterclaim nor sought during trial. The lower court is limited to the issues raised in the pleadings and the proof contained in the record. Duncan v. Duncan, 417 So.2d 908, 910 (Miss. 1982); Seymore v. Greater Mississippi Life Ins. Co., 362 So.2d 611, 614 (Miss. 1978).

D. Credits for Cash, Gas, Utilities, and Unauthorized Checks
Roy Crow claims the chancellor abused his judicial discretion in failing to give him credit for (1) cash payments allegedly made directly to his daughters, (2) gasoline charges by his daughters in the amount of $1,560.00, and (3) payment of the electrical bill and water bill in the amounts of $2,059.08 and $255.00, respectively, for the home where the children and Lynette lived for seventeen (17) months. We think not.
Roy testified he paid the children approximately $6000.00 in cash for child support, *1231 much of which was placed inside a mailbox; he had no record of these payments.
Roy also testified that water utilized by his sawmill as well as water flowing to the marital home was measured by the same meter. The $372.50 claimed by Roy as a child support credit included payments for water used by the mill. Roy could not identify with any certainty the part of the bill generated by his family and the part generated by his business.
Although Roy had been paying the electrical bill for the marital home from April of 1990 through August of 1991, Lynette testified without contradiction by Roy that these payments were the product of a verbal agreement whereby Roy voluntarily agreed to pay the electric and water bills until he could put the house in Lynette's name. At the time of trial, Roy had not conveyed his interest in or the title to the marital home.
Roy testified the children charged gasoline at a service station in Kossuth at the rate of $75.00 to $100.00 a week and later at a rate of $13.00 to $15.00 a week. Karen testified she and her sister had charged some gasoline but had not made a habit of charging. Karen had not made any gasoline purchases recently because she did not have a car.
Although a continuance had been granted to Roy for the purpose of securing documentation for these expenditures, Roy could only produce six (6) invoices reflecting a total of $104.00. Roy testified he generally paid his gasoline expenditures by check but produced no cancelled checks.
The Chancery Court of Alcorn County had ordered Roy to pay to Lynette "the sum of $600.00 per month for the support and maintenance of the two minor children." Roy chose not to do so; rather, it appears he made his own decision as to how he would pay child support which resulted in indiscriminate payments made directly to the children and voluntary payments for gasoline and utilities. "No party obligated by a judicial decree to provide support for minor children may resort to self help and modify his or her obligation with impunity." Cumberland v. Cumberland, 564 So.2d 839, 847 (Miss. 1990). A party making an extra-judicial modification does so at his own peril. Alexander v. Alexander, 494 So.2d 365, 367-68 (Miss. 1986).
Roy has failed to demonstrate by a preponderance of the evidence he paid support money to the children under circumstances where the support money was used to provide shelter, food, clothing, and other necessities for their benefit. Roy has failed to do so here. Accordingly, this Court cannot say the chancellor abused his judicial discretion in failing to credit Roy for these payments.
Although Roy never paid, whether by cash or check, child support payments directly to Lynette (R. 7), the rule is that a father may receive credit for having paid child support where, in fact, he paid the support directly to or for the benefit of the child, where to hold otherwise would unjustly enrich the mother. Alexander v. Alexander, supra, 494 So.2d 365 (Miss. 1986). This principle applies, however, only where the father proves by a preponderance of the evidence that he has, in fact, paid the support to the child under circumstances where the support money was used for the child for the purposes contemplated by the support order, that is, to provide shelter, food, clothing, and other necessities for the child. Nichols v. Tedder, 547 So.2d 766, 769 (Miss. 1989).

E. The Blazer Automobile
The separation agreement incorporated by reference into the final decree of divorce provided in paragraph 5 that Roy was to convey to Lynette title to the 1983 Blazer and Z-28 Toyota automobiles, make monthly payments for the indebtedness on the Blazer, and hold Lynette harmless from this indebtedness. Lynette's complaint for citation of contempt alleged that Roy had failed to convey his interest in or title to the vehicle. She testified that Roy never conveyed title to the Blazer.
Roy testified the Z-28 automobile used by Tina was involved in a wreck and "totaled". *1232 Roy gave Tina $3750.00 from insurance proceeds plus $1300.00 from another source. Tina used this money to purchase a replacement vehicle.
The 1983 Blazer automobile used by the girls was stolen at Northeast Community College in April or May of 1991. Roy took the $4000.00 insurance proceeds and used it to pay off the bank lien. According to Lynette, Roy did not owe a great deal of money on the Blazer.
Lynette testified at trial she was seeking a replacement vehicle for the Blazer. Roy admitted he had not replaced the Blazer but testified he was going to give Lynette the 1978 Oldsmobile which Lynette claimed had been given to her in 1978 as a Mother's Day gift. Although the Oldsmobile was titled in Roy's name, she claimed the car was hers by verbal agreement.
Roy contends the chancellor abused his judicial discretion in ordering him to pay Lynette the sum of $4000.00 for the replacement of the 1983 Blazer automobile. This is the same amount as the insurance proceeds collected by Roy and used by him to pay the lienholder.
It is not error for the trial court to require a parent to furnish an automobile as part of an award for the care and maintenance of children. Diamond v. Diamond, 403 So.2d 129 (Miss. 1981). This Court cannot agree with Roy that he has been unduly penalized and that Lynette has been unjustly enriched. The chancellor's decision restored both parties to their positions after compliance with the final decree of divorce.

CONCLUSION
This is a case where both parties contracted in writing as to what they were going to do after the divorce was granted as demonstrated by a "Stipulation and Agreement" incorporated into the Final Judgment of Divorce. The chancellor's decision was both judicious and correct and is affirmed.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion.
ROBERTS, J., not participating.
McRAE, Justice, dissenting:
Because the majority mistakenly concludes that the child support provisions of the separation agreement between the parties is a contract rather than a judgment, I respectfully dissent.
The four-page separation agreement executed by the parties provided that Roy would pay to "the Wife" $600.00 per month child support for their two daughters, then seventeen and nineteen years old, and that he would pay for all of their reasonable college expenses. That agreement was incorporated into the final judgment of divorce. It is neither a contract nor a settlement, but a judgment. As we stated in Brown v. Brown, 566 So.2d 718 (Miss. 1990), a judgment for child support included within a divorce decree "is not a settlement of property rights, which is immutable, fixed and not subject to change, but a decretal provision based upon the reasonable needs of a child coupled with the ability of a parent to pay." Id. at 721; Carpenter v. Carpenter, 519 So.2d 891, 894 (Miss. 1988). Whether the terms of the child support provisions are ordered by the court or agreed to by the parties and ratified by the court, they are governed by the same rules. Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983). As equity demands, the child support provisions agreed to by the parties, are, therefore, subject to modification upon a showing of a material change in circumstances not contemplated at the time of the divorce decree.
A chancellor, however, "has no authority to order child support in any form, whether regular, college expenses, or otherwise, to continue in effect post-majority." Stokes v. Maris, 596 So.2d 879, 882 (Miss. 1992) (emphasis added); Nichols v. Tedder, 547 So.2d 766, 768 (Miss. 1989). While an agreement between the parties to provide *1233 post-emancipation support may be enforceable as between the parties, Nichols and its progeny have drawn a clear line of demarcation regarding the enforceability of a child support judgment by a chancellor once the child has reached the age of twenty-one. 547 So.2d at 768.
To perceive as a contract an agreement for child support which has been ratified and made part of a divorce judgment is contrary to our established body of family law. It invites application of the strict canons of contract interpretation, as opposed to the more flexible principles of child support modification, which equitably balance the reasonable needs of the children with the parents' ability to provide for them. The majority's decision today is clearly result-oriented to insure that Tina Crow's college expenses are paid by her father past her twenty-first birthday. I question, however, the majority's reaction if the tables were turned  that is, if the parties had "contracted" for a specific dollar amount for tuition, room and board and the mother sought a modification to accommodate an unanticipated tuition hike. Would the "contract" still be "binding" upon her and the child?
Accordingly, I dissent.