818 So.2d 1272 (2002)
David Neal WESSON, Appellant,
v.
Sandra Murphy WESSON, Appellee.
No. 2000-CA-01985-COA.
Court of Appeals of Mississippi.
June 11, 2002.
*1275 Kenneth Allen Weeden, Tupelo, attorney for appellant.
C. Michael Malski, Tupelo, attorney for appellee.
Before McMILLIN, C.J., LEE, and BRANTLEY, JJ.

PROCEDURAL HISTORY AND FACTS
LEE, J., for the court.
¶ 1. David and Sandra Wesson were married in 1977 and two children were born to their union, Chi in 1979 and Alex in 1983. The Wessons separated in 1998, and an order for separate maintenance was entered at that time. Pursuant to the order of separate maintenance, Sandra was granted temporary custody of the two boys, David was ordered to pay $676 per month in child support for both boys, David was to maintain health insurance coverage for Sandra and the children, paying eighty percent of medical expenses not covered by insurance, and Sandra was granted use of the marital home with David paying the house note.
¶ 2. The final judgment of divorce was issued October 26, 2000. With this order, the Prentiss County chancellor found that David was disabled and was earning approximated $1,257 per month in workers' compensation benefits, and Sandra earned approximated $620 per month as a teacher's assistant. Of the Wessons's two children, Chi had turned twenty-one by the time of the judgment and was, thus, found to have been emancipated. Custody of Alex, the younger child, was awarded to Sandra with David being ordered to pay $175 per month in child support, which was the statutory fourteen percent of his gross income. The chancellor noted that a modification in the support order could be made later should David become able to return to his usual employment at United Parcel Service (UPS). David was further ordered to maintain health insurance on Alex with the parties dividing medical expenses not covered by that insurance. The chancellor found that Sandra was entitled to one-half of David's pension plan. Sandra was granted exclusive use and possession of the marital home and its contents, and David was ordered to pay the *1276 house note and insurance payments for the house with the house payment serving as alimony to Sandra. Also, the house had fallen into foreclosure, and the chancellor ordered that David take steps to bring the house out of foreclosure. In the final judgment of divorce, the chancellor found David to be in contempt for failing to abide by the terms of the temporary decree. The chancellor found him to be $8,680.10 in arrears for child support and home utilities payments required under the temporary decree.
¶ 3. David now argues to this Court that the chancellor erred in the following respects: in her equitable division of personal property and award of one-half of David's pension plan to Sandra; in awarding alimony to Sandra in the form of David's required payment of the house note and home insurance; in finding that Sandra was entitled to a share of any future workers' compensation settlement David might receive; and the chancellor's finding David in contempt for not abiding by the terms of the temporary decree and for failing to credit David for child support payments made subsequent to Chi's having become emancipated.
¶ 4. We review each of David's issues but find no merit. Thus, we affirm the chancellor on all issues raised with this appeal.

DISCUSSION OF THE ISSUES

I. DID THE CHANCELLOR ERR IN HER EQUITABLE DISTRIBUTION OF THE WESSONS'S MARITAL PROPERTY?
¶ 5. David argues that the chancellor erred in dividing the marital property, specifically in awarding David only the personal property in his possession at the time of trial and in finding that Sandra was entitled to one-half of David's retirement plan. "The court's standard of review in domestic relations matters is limited. We will not disturb the findings of a Chancellor unless the Chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Traxler v. Traxler, 730 So.2d 1098 (¶ 13) (Miss.1998).
¶ 6. We first review David's claim concerning the personal property. David includes in his brief a list of personal property he asked for at the trial, but which the chancellor failed to award him. David claims that the chancellor failed to take into consideration that he worked extremely hard throughout the marriage to provide for his family, that he provided many domestic services for the family, and that his emotional contributions to the family equaled or exceeded those of Sandra. Sandra counters that the chancellor was able to review all of the evidence presented by the parties concerning the contributions to the marriage, the running of the household, and the rearing of the children. Although David argues to the contrary, we can find no evidence of abuse of discretion in the chancellor's decision to award David his personal effects and his expensive videotaping system with which he earned extra income by taping special events, while allowing Sandra to retain use of the marital home and its contents in order to raise the couple's remaining minor child. The evidence presented showed that without David's financial assistance, Sandra was not able to even provide basic necessities for her household, including food and utilities, much less purchase her own new furnishings for the home should David take the present ones.
¶ 7. Mississippi is not a community property state; thus, the chancellor is not required to divide marital property equally. Redd. v. Redd, 774 So.2d 492 (¶ 7) (Miss.Ct.App.2000). David attempts to show that the greater balance of marital assets was awarded to Sandra; however, *1277 he has not proven that the chancellor abused her discretion in the division of personal property; thus, we are without authority to reverse.
¶ 8. David also argues that the chancellor erred in awarding one-half of his retirement and pension funds to Sandra while failing to consider the $3,000 Sandra had accumulated in her own retirement fund. The supreme court has held that retirement or pension funds accumulated during the marriage are marital property properly subject to equitable distribution. Tillman v. Tillman, 716 So.2d 1090(¶ 18) (Miss.1998). Although numerically Sandra's amount of retirement, which includes one-half of David's plan, is greater than the amount which David is left, "[i]t must be remembered, the goal of the chancellor in a divorce case is to do equity." Tillman, 716 So.2d at (¶ 19). Looking to the overall facts and financial circumstances of the parties after the divorce, we can find no evidence of manifest error in the chancellor's decision to award Sandra one-half of David's total pension. There is no merit to this argument.

II. DID THE CHANCELLOR ERR IN ORDERING DAVID TO PAY THE HOUSE PAYMENTS AS A SUBSTITUTE FOR ALIMONY TO SANDRA?
¶ 9. The chancellor ordered David to pay the monthly mortgage payments on the home and to pay home insurance payments as well, while giving Sandra use of the home until she remarries or until the younger child reaches twenty-one, whichever occurs first. David objects, saying if he abides by these orders he will become financially destitute. He also argues that alimony was not proper in any form in this situation, since alimony should only be considered "[i]f the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party...." Henderson v. Henderson, 703 So.2d 262 (¶ 15) (Miss.1997). Further, David argues that the chancellor failed to set forth in her findings an analysis of the facts which led to the alimony award. Sandra counters that even while David was not able to work and was drawing workers' compensation benefits, her net monthly income was less than one-half of David's income. Also, Sandra points out that there was minimal personal property to divide and she was left with no disposable income after the distribution.
[R]ehabilitative periodic alimony ... is subject to modification, terminates upon remarriage of the recipient or the death of either former spouse, and has a time limit set by the court. It is awarded to assist the recipient "to become self-supporting without becoming destitute in the interim." Rehabilitative alimony is not intended to equalize income between former spouses; instead it gives the chancellor another tool for achieving equity.
Bridges v. McCracken, 724 So.2d 1086 (¶ 7) (Miss.Ct.App.1998).
¶ 10. We review the record and testimonies and find that the chancellor was presented ample evidence concerning the status of the couple's financial situations before and after the divorce. David explained his injury in detail and described his work at UPS and his financial obligations after the divorce. Sandra explained that without financial assistance from David, she would not be able to provide the basic necessities for herself and for their minor son still living with her. "Alimony awards are within the chancellor's discretion, and we may not reverse unless we find the chancellor committed manifest error in his findings of fact and abused his discretion." Graham v. Graham, 767 So.2d 277 (¶ 7) (Miss.Ct.App. 2000). David has not presented any evidence *1278 of the chancellor's abuse of discretion and we will not disturb her award.

III. DID THE CHANCELLOR ERR IN RULING THAT SANDRA WAS ENTITLED TO A SHARE OF ANY FUTURE WORKER'S COMPENSATION SETTLEMENT DAVID MIGHT RECEIVE?
¶ 11. The chancellor stated in her judgment of divorce, "The Court is aware that David may well receive a Worker's Compensation settlement. Sandra will be entitled to share in that settlement as provided in Tramel v. Tramel, 740 So.2d 286 (Miss.1999)." David argues that Tramel does not require that he share any settlement with Sandra.
¶ 12. In Tramel, the chancellor awarded the wife forty percent of the proceeds from a personal injury settlement the husband received as a result of an on-the-job accident. Tramel, 740 So.2d at (¶ 2). The husband appealed and argued that the chancellor erred in finding the entire proceeds of the settlement were marital assets subject to equitable distribution. Tramel, 740 So.2d at (¶ 5). This Court reversed and remanded to allow the parties opportunity to present evidence concerning the amount of the claim attributable to each party. Id. The supreme court agreed with our decision and concluded that on remand an "analytical approach" should be taken to determine how to classify a settlement for the purpose of distribution in a divorce proceeding. Tramel, 740 So.2d at (¶ 16). The analytical approach involves an "evaluation of the purpose of the compensation in the determination of the character of the award or settlement as marital or personal." Tramel, 740 So.2d at (¶ 12). According to the analytical approach, pain and suffering is considered personal to the injured person, lost wages and medical expenses incurred during the marriage is marital, but compensation for future economic losses is not marital. Id.
¶ 13. Looking to David's future settlement possibilities, we are not given any indication as to the amount of such award nor are we enlightened concerning the purpose for which such award may be entered. The chancellor appeared to have recognized this, as well, as she declined to allocate any specific portion to either party, merely stating that the Tramel principles should be followed if David does receive a settlement in the future. Whatever portions may be allocated to each party is for future determination. The chancellor has made no error in her actions here.

IV. DID THE CHANCELLOR ERR IN FINDING DAVID IN CONTEMPT?
¶ 14. David argues that the chancellor erred in finding him to be in contempt with regard to several areas: failure to pay utilities; failure to pay the house payment, hazard insurance and Sandra's car payment; failure to pay medical expenses not covered by his health insurance; and failure to pay child support.
This Court will not reverse a chancellor's finding where it is supported by substantial credible evidence. This standard of review holds true for contempt matters, too. "[C]ontempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than we are."
Varner v. Varner, 666 So.2d 493, 496 (Miss.1995) (citations omitted).
¶ 15. First, David argues the chancellor erred in finding him to be $1,884 in arrears for failure to pay utilities on the marital home. An exhibit showed *1279 payments David made to the power company for utilities on Sandra's home. When asked about the "missing" months, David testified that he must have paid cash for those months, although he had no receipts to present to the court showing such payment. When confronted with the suggestion that Sandra paid those bills, David said, "if she can't show a receipt, that proves I paid it." We defer to the chancellor's ability to view the witnesses for credibility, plus recognize the chancellor's opportunity to review the exhibits. Evidence was presented to show that David had not paid according to the chancellor's order, and David presented no credible evidence to the contrary; thus, we find no error on this point.
¶ 16. David also argues that the chancellor erred in finding him in contempt for failure to pay the house payment, the hazard insurance and Sandra's car payment. David admits he failed to make the payments, but argues that the chancellor should have considered his inability to pay. "A defendant may avoid a judgment of contempt by establishing that he is without the present ability to discharge his obligations. However, if the contemnor raises inability to pay as a defense, the burden is on him to show this with particularity, not just in general terms." Varner, 666 So.2d at 496. In David's efforts to discharge his obligations, he argues he was without the ability to pay due to his substantially reduced income resulting from his inability to work. However, in his testimony, David admitted he and a girlfriend bought a house, they both shared the costs of renovating the home, that David borrowed money from his father to pay an attorney, and that David was able to come up with money for his personal pleasure when he needed it. The evidence was presented and the chancellor in her discretion found that David had not met the burden of proving inability to pay. We find no error.
¶ 17. Next, also regarding the contempt citation, David argues the chancellor erred in finding that he had failed to pay medical insurance expenses not covered by his health insurance, as required in the judgment of divorce. We look to the record to find that both parties addressed this topic, with Sandra testifying that David failed to pay his required share of medical expenses of $820.96. Sandra did not provide the chancellor with any documentation or copies of medical bills reflecting this amount, and David testified that he never received notice that the bills were due. We review the chancellor's opinion, however, and find that she never mentions this alleged arrearage in her judgment citing David for contempt. The only arrearages she mentions include child support, home utilities, and home mortgage payments. At the conclusion of her judgment, the chancellor writes, "All other relief prayed for by either party is denied." Thus, we must presume that the chancellor declined to accept Sandra's testimony alone as sufficient to show David failed to pay his required share of the medical expenses. Accordingly, we find no need to address this issue.
¶ 18. David also argues that the chancellor erred in finding him to be in contempt for failing to make the required child support payments. He argues that although he might not have made payments for child support per se, he did spend large amounts of money on other necessities for the children, including automobile upkeep, necessary school expenses, and payments for medicine. He also argues he should be credited for child support payments he made during the two months he lived with and attempted to reconcile with Sandra.
¶ 19. We look to the evidence presented in this case and find that David often made what he calls "child support" payments *1280 directly to the children in the form of cash payments. Sandra counters that the court order stated David was to pay the child support directly to her, and she had no way of accounting for monies David actually paid to their sons, since the boys were not required to tell her exactly the amount their dad paid them and because the boys might spend the money before telling their mother they received it. Sandra argues that David's failure to pay the money directly to her as ordered by the court prevented her from using the money to pay for necessary living expenses such as grocery bills and cable bills.
¶ 20. In Crow v. Crow, 622 So.2d 1226, 1228 (Miss.1993), the father was required to pay child support directly to the mother for the benefit of their children. The mother testified that she never was paid anything, but the husband paid money directly to the children. Id. The supreme court determined, "In the final analysis, [the father] kept no records, obtained no receipts, and had no idea as to the amount of money he had paid for regular child support which had been intermingled with other payments for care and maintenance such as college and health related expenses." Id. Although neither the father nor the mother kept records of these alleged payments, the mother did agree to give the father credit for $3,960 which she confirmed was paid for the benefit of the children; the chancellor calculated that this left an arrearage in the amount of $5,640. Id.
Whether [the father] was in arrears and the amount of any arrearage involved questions of fact. "[T]he findings of the chancery court concerning findings of fact, particularly in the areas of divorce and child support, will generally not be overturned by this Court on appeal unless they are manifestly wrong".... These fact-findings are the equivalent of a jury's verdict upon conflicting evidence. Stated differently, unless the chancellor committed manifest error, we will not reverse a chancellor's findings of fact where we find those facts supported by substantial credible evidence in the record. "Where evidence conflicts, ... this Court typically defers to the chancellor as fact-finder." In the case sub judice, the chancellor, based upon his observation of the witnesses and their testimony, much of which was conflicting, made a finding of fact from the proof that [the father] was in arrears in the amount of $5,640.00. This Court holds the record supports his finding and is not manifestly wrong. "The credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts."
Crow, 622 So.2d at 1228-29 (citations omitted).
¶ 21. In the present case, the order for temporary relief stated that David was to pay to Sandra the sum of $676 per month for the support and maintenance of the two children. Testimony from both David and Sandra as well as evidence presented showed that David made payments aside from child support to assist the children, including making car repairs and paying school bills. Whether or not these payments should be credited to David against his child support arrearage was a question left for the chancellor's discretion. As occurred in Crow, testimony conflicts as to whether or not the mother was provided monetary support to enable her to pay for necessary expenses related to caring for the children, including grocery money and other incidental living expenses that she was responsible for paying. The chancellor was provided with evidence concerning payments and also had the opportunity to judge the credibility of both David and Sandra to determine the truthfulness of each's testimony. David has presented no *1281 indication that the chancellor abused her discretion, and in light of Crow, since the testimony of David and Sandra conflict, we defer to the chancellor as the finder of fact. There is no error in the chancellor's finding David in arrearage.

V. DID THE CHANCELLOR ERR IN FAILING TO CREDIT DAVID FOR PAYMENTS MADE AFTER THE OLDER CHILD ALLEGEDLY BECAME EMANCIPATED?
¶ 22. We address David's final point which concerns the emancipation of the older child, Chi Wesson. David claims that Chi was emancipated as of April 2000 when he was twenty years old, he had quit school and had taken a full-time job to support himself. Chi testified that he lived with a roommate for less than a month, then he moved back home because he could not afford to pay the rent. David claims that the chancellor should have entered an order retroactive to April 2000 to relieve David of child support obligations for Chi since he was emancipated as of that date.
¶ 23. We recognize the rule that a "chancellor may allow a child support obligor credit for support paid when one child is emancipated.... [U]nder proper circumstances the obligor should be allowed an opportunity to prove in court that he or she is entitled to a credit for child support payments made after one of the children is emancipated." Gray v. Pearson, 797 So.2d 387 (¶ 17) (Miss.Ct. App.2001). The question of emancipation has come before this Court and the supreme court many times. In Caldwell v. Caldwell, 579 So.2d 543 (Miss.1991), the supreme court noted:
Emancipation, as employed in the law of parent and child, means the freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it ... "[e]mancipation has also been defined as the grant by a parent of the right to the services and control of a minor child. In a general sense, parental emancipation signifies a surrender and renunciation of the correlative rights and duties touching the care, custody, and earnings of the child."
Caldwell, 579 So.2d at 549. In Caldwell, the supreme court reversed the chancellor's finding of emancipation, noting that the child worked full-time and attended college part-time, paid his monthly truck payment, lived at home while depending on his mom to provide for his necessities, and did not contribute to the household expenses. Id. Thus, the child had not been freed from his parents's care although he did work full-time and pay some of his own expenses.
¶ 24. In Andrews v. Williams, 723 So.2d 1175 (Miss.Ct.App.1998), this Court found that the son had not become emancipated when upon graduating from high school he moved in with his dad, took a job, then two months later quit his job and moved back in with his mom since he did not make enough money to support himself. Andrews, 723 So.2d at (¶ 13). The supreme court found that although the son met the technical requirements for emancipation pursuant to statute,[1] he was unable *1282 to support himself independently, and he relied on his mother to pay necessary expenses and to manage his finances. Id.
¶ 25. In the present case, Chi testified that he moved in with a friend and worked full-time, but this arrangement only lasted for a month before he had to move back in with his mom because he could not afford to support himself. Therefore, like Caldwell and Andrews, although Chi possibly met the technical statutory requirements for emancipation, he was unable to support himself on his own, thus defeating this requirement for emancipation. Chi testified that his dad gave him money for personal trips, his father bought clothes for him, his father gave him a truck and took care of the vehicle's upkeep, that his father and mother helped pay for college expenses, and that his grandmother occasionally gave him money for meals; thus, we cannot find that he was emancipated for child support purposes. We find that the chancellor had this evidence before her as to allow her to make a discretionary decision concerning Chi's emancipation and concerning any reimbursement to which David could be entitled due to Chi's emancipation prior to the chancellor's finding of such in November 2000. There is no merit to this issue.
¶ 26. Having found no merit to any issue David raises with this appeal, we affirm the judgment of the chancellor on this matter.
¶ 27. THE JUDGMENT OF THE PRENTISS COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, MYERS AND BRANTLEY, JJ., CONCUR. BRIDGES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, J. CHANDLER, J., NOT PARTICIPATING.
BRIDGES, J., Dissenting:
¶ 28. According to the Mississippi Supreme Court, determinations of alimony must be supported by appropriate findings of fact. Sandlin v. Sandlin, 699 So.2d 1198, 1204 (Miss.1997). The chancellor erred by not providing any findings of fact to support the award of periodic rehabilitative alimony in the form of mortgage payments. I would remand this case that the chancellor may provide appropriate findings of fact supporting her decision to award periodic rehabilitative alimony.
¶ 29. This Court is not tasked with the responsibility of determining the contents of the record; rather, that responsibility lies with the trial court, which is in the best position to ascertain the facts of the case, as they are all brought to light in front of it. The chancellor must articulate specific facts to support her decision, so that this Court may properly scrutinize the appeal. Flechas v. Flechas, 724 So.2d 948, 954(¶ 18) (Miss.Ct.App.1998).
¶ 30. Consequently, although I concur with my colleagues in affirming the child support award and regarding David Wesson's potential workers' compensation claim, I would remand for findings of fact supporting the alimony award.
IRVING, J., JOINS THIS SEPARATE OPINION.
NOTES
[1] "The duty of support of a child terminates upon the emancipation of the child. The court may determine that emancipation has occurred and no other support obligation exists when the child: (a) Attains the age of twenty-one (21) years, or (b) Marries, or (c) Discontinues full-time enrollment in school and obtains full-time employment prior to attaining the age of twenty-one (21) years, or (d) Voluntarily moves from the home of the custodial parent or guardian and establishes independent living arrangements and obtains full-time employment prior to attaining the age of twenty-one (21) years." Miss.Code Ann. § 93-5-23 (Rev.1994).