# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-01685-SCT

*MITCHELL LAMAR CHESNEY*

*v.*

*CYNTHIA ANN CHESNEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/15/2004 |
| TRIAL JUDGE: | HON. SARAH P. SPRINGER |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | CRAIG ANDREW CONWAY |
| | EARL P. JORDAN |
| ATTORNEY FOR APPELLEE: | LAWRENCE PRIMEAUX |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 09/08/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., CARLSON AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1. This case involves the appeal of a child support award rendered in a divorce proceeding in the Chancery Court of Lauderdale County. Mitchell Lamar Chesney (Mitch) appealed the trial court judgment, which the Court of Appeals affirmed in part. This Court, on writ of certiorari, affirmed the decision of the Court of Appeals in part, and reversed and remanded in part. On remand, the chancellor made specific findings of fact and conclusions of law to support her original child support award. Mitch now appeals from that decision.

## FACTS AND PROCEDURAL HISTORY

¶2.    Mitchell Lamar Chesney (Mitch) and Cynthia Howington Chesney (Cindy) were granted a divorce on the ground of irreconcilable differences in the Chancery Court of Lauderdale County.  The Chesneys' marriage produced three daughters, Kimberly, Jennifer, and Aimee.[1] The Chesneys were unable to reach a settlement concerning certain financial matters, so the chancellor adjudicated the award of child support, division of marital assets, and alimony. Unhappy with the chancellor's decision, Mitch appealed.  The Court of Appeals affirmed the equitable distribution of marital assets, reversed and remanded for further proceedings on the establishment of a proper level of child support and reversed and rendered on the award of periodic alimony and attorney's fees.[2]   This Court affirmed the Court of Appeals' decision to reverse and remand the case for a determination of an appropriate child support award, supported by an evidentiary record, and its decision to deny periodic alimony; however, this Court reversed the Court of Appeals on the issue of attorney's fees and reinstated the chancellor's award.[3]

¶3.    On remand, the chancellor, in lieu of a hearing, had both parties submit proposed findings of fact and conclusions of law to aid in rendering her decision.  The chancellor ultimately found that Mitch had sufficient income to maintain his own standard of living after paying child support and additional court-ordered expenses and found that Cindy did not have the capacity to support herself and Aimee and maintain the same standard of living for Aimee

---

[1]  The oldest child, Kimberly, was emancipated at the time of the divorce.  Jennifer was a minor at the time of divorce but was an emancipated adult at the time of the July 15, 2004, judgment. The youngest daughter, Aimee, is still a minor.

[2]  *Chesney v. Chesney*, 828 So. 2d 219 (Miss. Ct. App. 2002).

[3]  *Chesney v. Chesney*, 849 So. 2d 860 (Miss. 2002).

as the older daughters had enjoyed. She found that it would be unjust and unfair not to require Mitch to provide financial assistance to Aimee at the same level as his other daughters since he had the financial capability to do so.

¶4. The chancellor found that a departure from the statutory guidelines was warranted in the instant case and rendered a judgment which required Mitch to: (1) pay monthly child support of $530; (2) pay one-half of Jennifer's college expenses until age 21;[4] (3) pay one-half of Aimee's tuition, books, fees, and extracurricular activities at the Lamar School; (4) pay one-half of the costs associated with any of Aimee's athletic activities, including lodging, gas, food, etc.; and (5) provide Aimee, upon obtaining her driver's license, with an automobile comparable to those given to the other daughters and pay for all major repairs and insurance on that vehicle. The chancellor did, however, require Cindy to pay for the gas, routine maintenance, and tag on Aimee's vehicle once it was purchased. Mitch now appeals from the chancellor's Opinion and Judgment, dated July 15, 2004, alleging that the chancellor erred on two specific grounds. He claims that (1) the chancellor failed in detailing specific findings which warrant a departure from the statutory child support guidelines; and (2) even if the chancellor's findings were sufficient to overcome the rebuttable presumption that the statutory award was sufficient, the award of child support on remand was excessive, constituting an abuse of discretion. As Mitch's allegations of error are without merit, we affirm the chancellor's award of child support.

## DISCUSSION

[4] The chancellor recognized that Jennifer had now attained age 21 and stated that any further educational support Mitch provided would be voluntary.

3

¶5. A chancellor has discretion in awarding child support, and this Court will not reverse the award "unless the chancellor was manifestly wrong in his finding of fact or manifestly abused his discretion." ***Clausel v. Clausel***, 714 So. 2d 265, 266 (Miss. 1998). Since the chancellor's process in weighing evidence and awarding child support "is essentially an exercise in fact-finding," this Court is "significantly restrained" in its review. ***Id***. at 266-67. Essentially, a chancellor's findings of fact will only be reversed when the record possesses no credible evidence to support them. ***Hensarling v. Hensarling***, 824 So. 2d 583, 586 (Miss. 2002). A chancery court's conclusions of law, however, are reviewed de novo. ***Southerland v. Southerland***, 875 So. 2d 204, 206 (Miss. 2004) *(Southerland II)*.

> **I. Whether the chancellor's factual findings were sufficiently supported by an evidentiary record to warrant a departure from the statutory child support guidelines.**

¶6. This State's general statutory guidelines for determining an appropriate award of child support state in relevant part:

> (1) The following child support award guidelines shall be a rebuttable presumption in all judicial or administrative proceedings regarding the awarding or modifying of child support awards in this state:

| Number Of Children Due Support | Percentage Of Adjusted Gross Income That Should Be Awarded For Support |
|---|---|
| 1 | 14% |
| 2 | 20% |
| 3 | 22% |
| 4 | 24% |
| 5 or more | 26% |

> (2) The guidelines provided for in subsection (1) of this section apply unless the judicial or administrative body awarding or modifying the child support award makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in Section 43-19-103.

4

. . . .

(4) In cases in which the adjusted gross income as defined in this section is more than Fifty Thousand Dollars ($50,000.00) or less than Five Thousand Dollars ($5,000.00), the court shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable.

Miss. Code Ann. § 43-19-101 (Rev. 2004).

¶7.     This Court has noted that this statutory guideline does "not control per se the amount" of a child support award. *Clausel*, 714 So. 2d at 267. Rather, the specific award amount must be set by the chancellor, "who has special knowledge of the actual circumstances" in each case. *McEachern v. McEachern*, 605 So. 2d 809, 814 (Miss. 1992). However, for this Court to affirm an award which deviates from the guideline of Section 43-19-101(1), the chancellor must overcome the rebuttable presumption that the statutory award is the appropriate measure of child support by making an on-the-record finding that it would be unjust or inappropriate to apply the guidelines in the instant case. *Id*.

¶8.     The criteria for determining if deviation from the statutory guideline in Section 43-19-101 is appropriate are found in Miss. Code Ann. § 43-19-103 (Rev. 2004), and require a chancellor to consider:

(a)     Extraordinary medical, psychological, educational or dental expenses.
(b)     Independent income of the child.
(c)     The payment of both child support and spousal support to the obligee.
(d)     Seasonal variations in one or both parents' incomes or expenses.
(e)     The age of the child, taking into account the greater needs of older children.
(f)     Special needs that have traditionally been met within the family budget even though the fulfilling of those needs will cause the support to exceed the proposed guidelines.
(g)     The particular shared parental arrangement, such as where the noncustodial parent spends a great deal of time with the children thereby reducing the financial expenditures incurred by the custodial parent, or

the refusal of the noncustodial parent to become involved in the activities of the child, or giving due consideration to the custodial parent's homemaking services.

(h)     Total available assets of the obligee, obligor and the child.

(i)     Any other adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt.

Additionally, this Court has stated that in determining the appropriateness of an award of child support, "the chancellor should consider all circumstances relevant to the needs of the children and the capacities of the parents." *McEachern*, 605 So. 2d at 814.

¶9.     Mitch challenges the chancellor's finding that departure from the statutory guidelines was appropriate here and argues that six of her findings were not supported by a sufficient evidentiary record to justify her decision.  The first finding with which Mitch takes issue required him to pay for one-half of all of Aimee's costs associated with her attendance at private school, under subsection (a) of § 43-13-103, regarding "extraordinary medical psychological, educational or dental expenses."

¶10.     Mitch contends that a father's decision to send his daughter to private school was an extraordinary expense not contemplated in the statutory guidelines. *See* *Southerland II*, 875 So. 2d at 207.    Additionally, he cites to *Hensarling*, 824 So.2d at 588, where this Court affirmed the chancellor's decision to require the non-custodial father to pay for his children's private school expenses, where he had a substantial income compared to his ex-wife's minimal income.    Mitch, however, argues that his situation is distinguishable from that in *Hensarling* because here, he and his ex-wife earn a comparable salary,[5] unlike the parties in *Hensarling*.

---

[5] The chancellor found that Mitch's annual gross income at the time of trial was $45,852.00 and that Cindy's annual gross income was $44,252.16.

6

He maintains that Cindy has adequate financial resources to pay for Aimee's private school education and argues that his agreement to send a child to private school is an inadequate basis for a support award that exceeds the statutory guidelines. See *Southerland v. Southerland*, 816 So. 2d 1004, 1007 (Miss. 2002) *(Southerland I)*. Though an agreement, without more, may be insufficient to warrant an award that includes private school tuition, this Court has upheld a chancellor's order requiring a father to pay private school tuition where the chancellor found he was "able to meet the expense" financially. *Southerland II*, 875 So. 2d at 207.

¶11. The chancellor found that the Chesneys indicated that they wanted their daughters to attend private school, that Mitch stipulated that Aimee should continue in private school, that Cindy was financially unable to continue sending Aimee to private school by herself, and that Mitch had sufficient income to pay for part of Aimee's schooling. Additionally, the chancellor found that it would be unfair to remove Aimee from the Lamar School, the only school she had ever attended, now that she was in high school. These findings are sufficient to rebut the presumption that the statutory guideline is the appropriate measure of child support in this situation.

¶12. A second finding, which Mitch challenges, is reflected in the chancellor's statement:

> There are no extraordinary medical needs, but Mr. Chesney is fortunate enough not to have to pay for Aimee's health insurance. It is a benefit to him in lieu of higher pay. The higher pay he would receive in lieu of this benefit would be figured into his adjusted gross income and would result in higher child support.

¶13. Mitch contends that this finding is insufficient to justify an increase in child support on the ground that it is an "extraordinary medical expense" under § 43-19-103(a). The chancellor made this finding not as a justification to support a monthly child support award that

exceeded statutory guidelines but rather to support her original decision, articulated in the Judgment of September 11, 2000, to require Mitch to maintain health insurance on his minor children because it costs him no out-of-pocket expenses to provide this benefit to his children. We accordingly find that Mitch's challenge to this finding is without merit.

¶14. Mitch challenges the sufficiency of a third finding, which he claims the chancellor made pursuant to § 43-19-103(c), concerning "the payment of both child support and spousal support to the obligee." This finding essentially stated that the appellate courts' reversal of Cindy's alimony award reduced her financial resources and required her "to rely totally on her wages and the child support she receives from Mr. Chesney for the support of the minor children." Mitch argues that the reversal of the alimony award is insufficient, standing alone, to justify additional child support. He also claims that this finding is inaccurate, based on the mention of "minor *children*," because only Aimee is a minor child, the older two daughters now being emancipated adults.

¶15. Mitch offers no case law to challenge the sufficiency of this finding. Rather, he relies only on his assertion that the chancellor did not adequately justify her deviation from the child support guidelines. Mitch has cited no authority to suggest that this is not a matter within the chancellor's discretion, especially in light of this Court's statement that a chancellor should evaluate "the reasonable need of the child," "the financial resources and reasonable needs of each parent," and "*any other relevant factor* shown by the evidence" in fashioning a child support award. *Cupit v. Cupit*, 559 So. 2d 1035, 1037 (Miss. 1990) (emphasis added). The fact that Mitch now has more disposable income than he would if he were paying alimony constitutes "any other relevant factor" for the chancellor's consideration. This finding was

8

sufficiently supported by an evidentiary record to justify the chancellor's deviation from the statutory guidelines.

¶16. Mitch challenges a fourth finding which addressed various expenses for Aimee, notably clothing, grooming, and sports activities. The chancellor noted that during the marriage Mitch's portion of the family income had been used to purchase, maintain, and insure vehicles for his older daughters when they reached driving age. Mitch charges that the chancellor failed to state how much Aimee's clothing expenses would actually be and argues that the $83.50 he was required to pay for "grooming, gifts, and cosmetics" was not enough to warrant his payment of additional expenses.

¶17. Mitch argues that his situation is similar to that of the father in *Cupit*, where this Court found that "the award of $400.00 per month for child support is clearly excessive and wholly ignores the reasonable and necessary needs of the children as well as the ability of the father to pay, thus rendering the award manifestly wrong." *Id*. at 1038. However, Mitch fails to acknowledge that we deemed the award in *Cupit* excessive because Mr. Cupit only netted $973.60 per month before being required to pay the $400 of child support and was ordered to pay several debts incurred during the marriage and one-half of all taxes and insurance on the family's home. *Id*. at 1037-38. Despite Mitch's argument to the contrary, the Opinion and Judgment in the instant case reflects that the chancellor did, in fact, look at Mitch's income and made specific findings regarding the needs of the Chesneys' children.

¶18. Miss. Code Ann. § 43-19-103 allows the chancellor to take into account the greater needs of older children in subsection (e), the special needs that have usually been met within the family budget in subsection (f), the total assets of the parties in subsection (h), and "any

9

other judgment" necessary for an equitable result. In the instant case, the chancellor considered the income Mitch made at the time of trial in 2000, $45,852.00, and the income he reported in both 2001 and 2002, $70,471.17 and $59,185.00 respectively, as an indication of Mitch's ability to support his minor child at a level above the statutory guidelines. Additionally, the chancellor found that Mitch had the ability to work overtime and was eligible for periodic raises, which would indicate that he was capable of shouldering a greater award of child support, while finding that Cindy was not able to work overtime and was not guaranteed a raise. The chancellor also listed specific monthly expenses which Cindy incurred in supporting her daughters.

¶19. Thus, the record reflects that the chancellor, within her discretion, considered Mitch's financial resources, looked at Aimee's normal activities and the expenses her parents incurred on her behalf prior to the divorce, and determined that she should not be deprived of her accustomed way of living in the future solely because of her father's unwillingness to contribute to those expenses. This finding is sufficient to justify the chancellor's deviation from the statutory child support guidelines.

¶20. Mitch takes issue with a fifth finding made by the chancellor, which he claims was made in accordance with the shared parental arrangement factor of § 43-19-103(g). The chancellor's finding mentioned that Mitch is now dating another woman, has reduced the amount of time spent with his daughters, and failed to help with the cost of his oldest daughter's wedding, an indication of his unwillingness "to spend extra time and money on his other minor children." Mitch contends that the chancellor is biased against him and that this finding fails to reflect the fact that he now lives in another state and that his two adult daughters now have their own

10

lives. He claims that present circumstances, rather than a lack of interest, are why he does not spend as much time with his daughters. He also notes that this finding is unfair in light of the fact that he has been timely in making his child support payments.

¶21. Whether the chancellor's statement was fair or not, Mitch has little cause to challenge its accuracy. The record does reflect that Mitch does not spend as much time with his daughters as he did previously, for whatever reason, and that he did not help in paying for his daughter's wedding. The chancellor is entitled to consider these facts, under § 43-19-103, in deciding to deviate from the statutory guidelines. Since there is evidence in the record to support these findings of fact, they were not made in error. Therefore, the chancellor did not err in making this particular finding or weighing it to support her ultimate decision.

¶22. Mitch challenges a sixth of the chancellor's findings regarding his ability to pay more child support than the statutory guidelines. However, he raises no new issues with this argument, but merely continues to assert that the finding was insufficient to support a deviation from the statutory guidelines. We, therefore, find that his challenge to this finding is without merit.

## II. Whether the child support award on remand was so excessive as to constitute an abuse of the chancellor's discretion.

¶23. Mitch argues that even if the chancellor made findings of fact that were sufficient to support a deviation from the statutory guidelines, the chancellor's ultimate child support award was excessive under the circumstances. He claims that the original monthly support award of $530, which was calculated as 20% of his adjusted gross income in 2001, should now be reduced because Jennifer is no longer a minor and Aimee is the only child who should be

considered in determining the proper support award. He claims that the proper measure of support is $371 per month, a figure that represents 14% of his adjusted gross income. He argues that the $159 amount above $371 is excessive, especially in light of the fact that the chancellor also ordered Mitch to pay additional expenses, such as an automobile for Aimee and one-half of the costs for private school.

¶24. The monthly award of $530 was not excessive at the time the chancellor made the initial award because Mitch was responsible for supporting two minor children at the time. Were the chancellor solely limited to an analysis of Mitch's income at the time of the original trial, then his argument that $371 per month is now an appropriate measure of child support may have some merit. However, the chancellor is not so limited in what she may consider in rendering her decision and may "consider any other relevant fact shown by the evidence." *Cupit*, 559 So. 2d at 1037. The chancellor could have calculated her current award based on Mitch's adjusted gross income for either the year 2001 or 2002, which would yield a higher statutory award than the $530 per month that the chancellor ordered him to pay.[6] The chancellor did, however, consider this income in ultimately determining that it would be unfair to require Mitch to pay only enough child support to meet Aimee's minimum physical needs "when Mr. Chesney has the financial ability to contribute to a portion of these expenses that he has previously paid for the older daughters."

---

[6] Mitch's annual adjusted gross income for 2001 was $67,318. The statutory computation for one child, 14% of $67,318, yields an annual child support award of $9,242.52, or $785.37 per month. Mitch's annual adjusted gross income for 2002 was $66,384. The statutory computation for one child, 14% of $66,384, yields an annual child support award of $9,293.76, or $774.48 per month.

¶25. Based on Mitch's reported income, the chancellor did not abuse her discretion in ordering Mitch to pay one-half of the expenses associated with Aimee's extracurricular activities and private schooling. The chancellor's mandate that Mitch provide a car for Aimee when she reaches driving age and obtains her license does go beyond the expenses normally contemplated in a child support award. However, the chancellor determined that Aimee should not be deprived of this privilege, afforded to her older sisters, merely because her parents are now divorced, especially when her father has the ability to meet this obligation. *See Crow v. Crow*, 622 So. 2d 1226, 1229 (Miss. 1993) (obligating father to pay portion of college expenses as child support award which included some car costs). Though an automobile is not an expense which every parent can provide to his/her child, it is not an abuse of a chancellor's discretion to require a parent to purchase a vehicle where warranted by the circumstances in a particular case.

## CONCLUSION

¶26. We find that the chancellor made sufficient factual findings, supported by the evidentiary record, to rebut the presumption that the statutory guideline of Miss. Code Ann. § 43-19-101 is the appropriate measure of a child support award. Additionally, we find that the chancellor's award was not so excessive as to constitute an abuse of discretion. Therefore, we affirm the chancellor's judgment.

¶27. **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**

13