# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CT-00964-SCT

*DONALD R. BREWER*

*v.*

*PENNY MATHIS HOLLIDAY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/22/2011 |
| TRIAL JUDGE: | HON. TALMADGE D. LITTLEJOHN |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | R. SHANE McLAUGHLIN |
| | NICOLE H. McLAUGHLIN |
| ATTORNEY FOR APPELLEE: | ELIZABETH FOX AUSBERN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 01/09/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC**.

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Donald and Penny Brewer and their respective attorneys negotiated, agreed to, and signed off on a proposed order that changed custody of one of the parties' two children, John, to Donald, and reduced his child-support obligation.  Although the attorneys failed to present the order to the chancellor, the Brewers – believing it had been entered – complied with its terms for several years.  But when the chancellor later learned that Donald had paid the reduced amount of child support, he refused to admit any evidence of the agreement, ordered Donald to pay the full amount of arrearage, and held him in contempt.  We hold that Donald should not have been held in contempt; that he is entitled to credit for any payment of support

he made directly to, or on behalf of, John; and that the chancellor should have granted Penny a judgment for past-due child support, reduced by the credit. Accordingly, we reverse and remand for a hearing consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2. When Donald R. Brewer and Penny Mathis Holliday divorced in 2005, the chancellor awarded physical custody of their two minor children to Penny and ordered Donald to pay $1,185 per month in child support. Soon after the divorce was final, one of the children, John, moved in with Donald, who nevertheless continued to pay the full amount of child support to Penny.

¶3. The following year, the parties became embroiled in contempt litigation. After submitting to private mediation, the parties agreed that Donald would have custody of John, and that Donald's monthly child-support obligation would be reduced from $1,185 to $600. Both parties signed a memorandum of understanding that set forth the agreement, and the parties' respective counsel approved an agreed order of modification.

¶4. For reasons not explained in the record, the parties' attorneys failed to submit the agreed order to a chancellor for approval. But, according to email and other communications, the parties and their respective counsel all believed the order had been entered and was in force, and the parties complied with the terms of the agreement.

¶5. Two years later, when Donald filed for bankruptcy, Penny learned that the agreed order had not been entered, so she demanded child-support arrearage in the bankruptcy proceedings. The bankruptcy judge deferred the child-support issue to the chancery court,

2

but the chancellor delayed addressing the matter until the conclusion of the bankruptcy proceedings.

¶6.     After the conclusion of Donald's bankruptcy proceedings, Penny instituted the present action by filing a Petition for Contempt and Other Relief, alleging that, since July 2006, Donald had paid only $600 per month of his $1,185 monthly child-support obligation. This, according to Penny, resulted in an arrearage of $31,005. Penny also asked the court for attorney's fees in the amount of $3,500 and $110 in court costs.

¶7.     In his answer to the complaint, Donald argued that the agreed order should govern because all parties had acted in compliance with it until 2009, when Donald filed a motion to have the agreed order entered *nunc pro tunc*, and Penny decided to withdraw her consent to the order.

¶8.     On the day of the hearing, the chancellor began by ruling that the agreement was unenforceable, and that he would not allow evidence of it, although he did allow the parties to make a proffer of the agreement and proposed order. Donald testified that he continued to pay child support, even though he "had the bigger burden because John was now in high school." He further testified that John:

> was approaching high school, you know, high school graduation and there's a lot of expense and costs to that. But I had agreed as part of the mediation and she had agreed to reduce, not to end the child support but only to reduce it.

¶9.     The chancellor entered a judgment against Donald for back-due child support in the amount of $34,515, which represented the full amount of the difference between the child support he had paid per month and the $1,185 required in the original divorce decree. The

3

chancellor found Donald in willful and contumacious contempt of the court for failing to pay the full amount of child support and awarded Penny $3,500 in attorney's fees.

¶10.   Donald appealed, and the Court of Appeals affirmed and awarded an additional $1,750 to compensate Penny for her appellate attorney fees.  We granted certiorari.

**ANALYSIS**

¶11.   We apply "a limited standard of review on appeals from chancery court."[1] We review questions of law de novo, but we "will not disturb the factual findings of a chancellor when supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard."[2]

¶12.   Donald relies on *Wright v. Wright* to argue that, because all parties acted in accordance with the terms of the agreed order, the chancellor should have entered it *nunc pro tunc*.  In *Wright*, the Court of Appeals affirmed enforcement of an extrajudicial modification of child support because both parties followed the terms of the agreement "under their good faith beliefs" that the court had entered the order.[3]  Here, however, the Court of Appeals rejected this argument because it found that Donald had abandoned the agreed order by filing a motion to modify child support from $1,185 to $737.

---

[1]*Tucker v. Prisock*, 791 So. 2d 190, 192 (Miss. 2001) (citing *Reddell v. Reddell*, 696 So. 2d 287, 288 (Miss. 1997)).

[2]*Biglane v. Under the Hill Corp.*, 949 So. 2d 9, 13-14 ( Miss. 2007) (quoting *Cummings v. Benderman*, 681 So. 2d 97, 100 ( Miss. 1996)).

[3] *Wright v. Wright*, 737 So. 2d 408, 410 (Miss. Ct. App. 1998).

¶13.    Penny claims Donald owes her back child support for both children, but she does not dispute that, for a year, she received child support for John, even though he resided with Donald. Nor does she dispute that the agreed order, which both parties operated under for at least two years, contemplated that Donald would continue to have care, custody, and control of John, and that he would pay a reduced amount of child support.

¶14.    This Court has recognized that, at times, equity may "suggest *ex post facto* approval of extra-judicial adjustments in the manner and form in which support payments have been made."[4] For instance, in **Alexander v. Alexander**, this Court held that equity required crediting a father for payments of child support made directly to the child – once the child moved in with him – instead of to the mother.[5] And in **Varner v. Varner**, we explained that "the father may receive credit for having paid child support where, in fact, he paid the support directly to or for the benefit of the child, where to hold otherwise would unjustly enrich the mother."[6] Noncustodial parents pay child support to custodial parents for the benefit of the child, not the parent,[7] and that support belongs to the child, not the custodial parent.[8]

---

[4] **Smith v. Smith**, 20 So. 3d 670, 674 (Miss. 2009).

[5] **Alexander v. Alexander**, 494 So. 2d 365, 368 (Miss. 1986).

[6] **Varner v. Varner**, 588 So. 2d 428, 435 (Miss. 1991).

[7] **Calton v. Calton**, 485 So. 2d 309, 310 (Miss. 1986) (citing **Wilson v. Wilson**, 464 So. 2d 496 (Miss. 1985)).

[8] **Alexander**, 494 So. 2d at 367.

¶15.    This Court has held that "parents cannot contract away rights vested in minor children. Such contracts would be void against public policy."[9] Only the court can grant a judgment to modify a parent's support obligation;[10] thus, "a party making an extrajudicial modification does so at his peril."[11]   Donald and Penny created an extrajudicial modification of child support, which the court never entered. As such, the chancery court did not err by refusing to enter the agreed order *nunc pro tunc*.

¶16.    Only a few weeks passed after the parties divorced before John moved in with Donald. Even so, Donald continued to pay Penny $1,185 per month in child support for two children until August 2006.  The chancellor, knowing that Donald had cared for and supported John throughout the time period in question, should have considered whether, under equitable principles, Donald was entitled to some amount of credit for his direct support of John.

*Willful contempt*

¶17.    Although the chancellor refused to admit much of the evidence concerning the parties' modification agreement, the agreed order, and their belief that it was in force, he did allow the parties to make a proffer.  Because this evidence goes squarely to the heart of the contempt matter, the chancellor should have admitted it.

---

[9] *Calton*, 485 So. 2d at 310.

[10] *Id*. at 311.

[11] *Varner*, 588 So. 2d at 434 (citing *Alexander*, 494 So. 2d at 367-68).

¶18.    This Court has held that "[a] citation for contempt is proper only when the contemner has willfully and deliberately ignored the order of the court,"[12] and evidence that a person did not willfully or deliberately violate the court's order serves as a defense to contempt proceedings.[13]

¶19.    The record, which includes the proffer, clearly indicates neither Donald nor Penny knew the attorneys had failed to present the agreed order for entry. Until Penny filed notice of her claim for child-support arrearage with the bankruptcy court in January 2008, Donald believed that the court had entered the agreed order. So, during this period of time, he could not have willfully ignored the order of the court.

¶20.    After Penny made her claim in the bankruptcy proceedings in 2008, Donald filed a motion for modification. Whether during this period of time Donald willfully and deliberately ignored the court's order is dependent upon the chancellor's findings on remand. The chancellor must determine whether – in light of Donald's motion for a reduction in child support and his direct care for, and support of, John – a finding of contempt is appropriate.

**CONCLUSION**

¶21.    We find that, in considering Penny's claim for past-due child support, the chancellor should have considered the undisputed fact that, for almost the entire period, John resided with Donald, and Donald provided direct support to him. Thus, we reverse the judgments

---

[12] ***Bredemeier v. Jackson***, 689 So. 2d 770, 777 (Miss. 1997) (citing ***Stevison v. Woods***, 560 So. 2d 176, 180 (Miss. 1990); ***Cooper v. Keyes***, 510 So. 2d 518, 519 (Miss. 1987)).

[13]***Mizell v. Mizell***, 708 So. 2d 55, 64 (Miss. 1998).

of both the chancery court and the Court of Appeals, and we remand this case to the chancery court for a hearing on these issues, consistent with this opinion.

¶22.    **REVERSED AND REMANDED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**