# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01366-COA

REGINA DIANE WEATHERS                                    APPELLANT

v.

SCOTTY WADE GUIN                                          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/01/2013 |
| TRIAL JUDGE: | HON. JOHN ANDREW HATCHER |
| COURT FROM WHICH APPEALED: | ITAWAMBA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL LEE DULANEY |
| ATTORNEYS FOR APPELLEE: | JAMES ROGER FRANKS JR. WILLIAM RUFUS WHEELER JR. |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| TRIAL COURT DISPOSITION: | MODIFIED CUSTODY OF MINOR CHILD AND FOUND MOTHER IN CONTEMPT |
| DISPOSITION: | REVERSED AND REMANDED - 11/18/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND JAMES, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.    After awarding custody of Regina Weathers and Scott Guin's minor son, Jacob, to Regina, the Chancery Court of Itawamba County entered a modification order transferring custody of Jacob to Scott and ordering Regina to pay child support for Jacob. The chancery court later entered a contempt order, finding Regina in contempt for violating the modification order. Regina appeals from the modification order, arguing that there was no basis for the custody modification because no hearing was held and she did not consent to

the terms of the order. Regina also argues that the chancery court erred by finding her in contempt.

¶2.     For the reasons that follow, we reverse and remand for further proceedings.

FACTS

¶3.     Regina and Scott were divorced on December 1, 2008. In the divorce decree, the chancery court awarded primary custody of two of Regina and Scott's minor children, Jacob and Brittany, to Regina, with Scott having visitation with them. The chancery court awarded Scott primary custody of the third minor child, Courtney, with Regina being awarded visitation.

¶4.     On June 4, 2013, Scott filed a complaint in the chancery court, seeking modification of the initial custody order to grant him custody of Jacob and Brittany based on substantial and material changes in circumstances, specifically: (1) Regina's consumption of alcohol in the children's presence, (2) Regina's disparaging statements about Scott to the children, and (3) Regina's threats to move the children to another state.[1] Scott also insisted that Regina had allowed Jacob and Brittany to suffer injuries, although he did not specify the type of injuries or how they occurred.

¶5.     By order filed July 8, 2013, without citing a material change in circumstances, the chancery court modified the original custody order and awarded permanent physical and legal custody of Jacob to Scott, with Regina having visitation. The chancery court also

---

[1] Scott styled this petition as a "Complaint for Modification and for Citation of Contempt," although he did not ask the chancery court to find Regina in contempt in the petition.

2

ordered Regina to pay child support for Jacob. Pursuant to the modification order, neither Scott nor Regina could move the children out of state, make disparaging remarks about each other in the children's presence, consume alcohol in the children's presence, or operate a motorized vehicle with either of the children while under the influence of alcohol. Despite the language in the modification order stating that the chancery court had made its findings after "both parties [had] appeared with counsel" and that the parties had appeared "[o]n the date and time set for hearing," no transcript has been provided to this Court on appeal. The modification order was approved as to form by Scott's attorney and Regina's attorney.[2]

¶6. Also on July 8, 2013, Scott filed a second complaint in the chancery court, alleging that Regina had refused to return Jacob to Scott's custody on Friday, July 5, 2013, and that Regina had made disparaging remarks about Scott in Jacob's presence.[3] Scott also insisted that Regina had failed to meet her child-support obligation and had refused to allow the children to speak with Scott when he called. On July 22, 2013, Regina filed a motion to set aside the modification order, arguing that she had neither agreed to nor approved the order and insisting that the order was entered without a hearing or presentation of any proof. The record reveals that the chancery court did not rule on the motion to set aside its modification order.

¶7. On August 7, 2013, Regina appealed "to the Supreme Court of Mississippi against . . . Scott . . . from the [o]rder filed on July 8, 2013." On August 22, 2013, the chancery court

_____

[2] Regina is represented by a different attorney on appeal.

[3] Scott also styled this petition as a "Complaint for Modification and for Citation of Contempt," although he did not ask the chancery court for a custody modification in the petition.

3

filed an order of contempt, finding that Regina was not in contempt for failing to return Jacob to Scott on July 5, 2013, but finding that Regina was in contempt for failing to fulfill her child-support obligation for Jacob and for making disparaging remarks about Scott in Jacob's presence.

¶8. In her appeal, Regina argues that the chancery court erred by modifying custody of Jacob without an agreement between the parties or a hearing on the merits to determine whether Scott had proved, by a preponderance of the evidence, that the custody modification was warranted. She insists that although her attorney approved the modification order as to form, she did not consent to its terms.

¶9. In response, Scott argues that the chancery court made its findings following a one-day trial. According to Scott, the chancery court instructed Scott's attorney to prepare the modification order, which was later presented to, and approved by, Regina's attorney. Scott insists that the chancery court modified custody of Jacob only after interviewing Jacob and Brittany in chambers. Additionally, Scott argues that the chancery court correctly applied the *Albright*[4] factors in determining Jacob's best interest, and that both the modification order and the contempt order were proper.

DISCUSSION

¶10. At the outset, we note that the chancery court's failure to rule on Regina's motion to set aside the modification order does not affect the validity of this appeal, as Regina's motion was filed more than ten days following the entry of the order modifying custody, and Regina filed her notice of appeal within thirty days of the entry of the modification order. Thus,

---

[4] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

Regina's motion to set aside the modification order must be treated as a Rule 60 motion. A Rule 60 motion pursuant to the Mississippi Rules of Civil Procedure "does not affect the finality of a judgment or suspend its operation." *Banks of Edwards v. Cassity Auto Sales Inc.*, 599 So. 2d 579, 582 (Miss. 1992); *see also* M.R.C.P. 60(b)(6).

¶11. We also note our lack of jurisdiction over issues concerning the contempt order due to Regina's failure to properly appeal from that order. Rule 3(a) of the Mississippi Rules of Appellate Procedure provides that "[a]n appeal permitted by law as of right from a trial court . . . shall be taken by filing a notice of appeal with the clerk of the trial court within the time allowed by Rule 4." Rule 4 of the Mississippi Rules of Appellate Procedure provides that a "notice of appeal . . . shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from." Here, Regina appealed only the modification order. Therefore, we only discuss the issues raised by Regina concerning the modification order.

### I.    Child Custody

¶12. In support of her argument that the chancery court erred by modifying custody of Jacob without a hearing and without her consent to the modification order, Regina cites two cases, *Klein v. McIntyre*, 966 So. 2d 1252 (Miss. Ct. App. 2007), and *Samples v. Davis*, 904 So. 2d 1061 (Miss. 2004). Before discussing these cases, we should point out that we cannot ascertain from the record whether the modification order was entered without the benefit of a hearing.

¶13. In Regina's designation of record, she asked that the transcript of the hearing conducted on July 1, 2013, be made a part of the record. Yet no transcript was provided.

5

Further, the order granting the modification does not reference a hearing on a specific date, although it does state that both parties appeared with counsel on the date and time set for the hearing. Noticeably, however, the order does not state that any evidence was adduced at the hearing or that the court made its findings based on any evidence adduced at the hearing. Additionally, the docket does not indicate that a hearing was set for July 1, 2013, although an "order of setting" was entered on June 18, 2013, apparently setting something for a hearing. It could have been a setting for a hearing on the motion for modification, but we are unable to ascertain from the record if that was the case. With this said, we return to the cases cited by Regina and discuss them in reverse order.

¶14. In *Samples*, following a divorce and after the parties had entered into a consent judgment governing the custody and maintenance of their children, the parties sought modifications of the judgment. *Id*. at 1062-63 (¶¶1-5). The parties went before the chancery court for a hearing, but no hearing was held due to a possible settlement of the parties' issues. *Id*. at 1063 (¶6). The parties later went before the chancery court a second time with a settlement agreement, which the appellant refused to sign. *Id*. at 1066 n.2. The chancery court later entered that judgment as a purported consent judgment. *Id*. The Mississippi Supreme Court found that because neither the appellant nor his attorney had signed the purported consent judgment and because the terms of the judgment were not announced in open court and recorded by a court reporter, there was not substantial credible evidence to support the judgment. *Id*. at 1065 (¶14). The facts of that case are distinguishable from the case before us. Here, the modification order is not a purported consent judgment.

¶15. In *Klein*, the chancery court entered a consent judgment as well as a judgment that

6

was not consented to by the parties, both of which were signed by the chancery court and the parties' attorneys. *Klein,* 966 So. 2d at 1254 (¶4). There was no transcript of any prior hearings held before the judgments were entered. *Id.* at 1256 (¶14). The judgments contained spaces, which were designated for the parties' attorneys' signatures and which indicated that the judgments were "Approved as to Form." *Id.* at 1254 (¶4). However, when signing the judgments, to make it clear that the appellant did not agree to the substance thereof, the appellant's attorney made a handwritten notation near the space designated for his signature, indicating that the judgments were "Approved as to Form Only." *Id.* at (¶¶4-5). On appeal, the pro se appellant submitted a statement from her attorney in which the attorney stated:

> I have enclosed copies of the agreed judgment and of the judgment reflecting the recent ruling by the Judge in your case. You will note that I signed them, but stated they were approved as to form only[,] which means that you do not agree with the content of the orders.

*Id.* at (¶6). Also on appeal, the appellant argued that the chancery court erred by entering both judgments because she had not agreed to their contents, as indicted by her attorney's handwritten notations. *Id.* at 1255 (¶8). As to the consent judgment, this Court found that the appellant had not expressed full agreement because she had agreed to the form of the consent order, but not to its substance. *Id.* at 1256 (¶15). As to the order that was not a consent judgment, this Court found that "[i]f . . . the order was not the result of the parties' agreement, the [chancery court] was required to make specific findings of fact to support the modification[.]" *Id.* at 1258 (¶20). *Klein* is distinguishable from the case now before us because this case does not involve a consent judgment. As previously indicated, there is no

7

language in the modification order that suggests that Scott and Regina had reached an agreement on the issues presented to the chancery court in Scott's first petition. Consequently, before entering the modification order, the chancery court was required to make factual findings to support the modification. The modification order makes no findings.

¶16. It is well established that "[c]hancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence." *Tidmore v. Tidmore*, 114 So. 3d 753, 757 (¶8) (Miss. Ct. App. 2013) (quoting *Wilson v. Wilson*, 79 So. 3d 551, 560 (¶37) (Miss. Ct. App. 2012)). "A chancellor's findings of fact will not be disturbed unless manifestly wrong or clearly erroneous. A chancellor's conclusions of law are reviewed de novo." *McDonald v. McDonald*, 39 So. 3d 868, 879 (¶33) (Miss. 2010) (citing *Lowery v. Lowery*, 25 So. 3d 274, 285 (¶26) (Miss. 2009)).

¶17. "When considering a modification of child custody, the proper approach is to first identify the specific change in circumstances, and then analyze and apply the *Albright* factors in light of that change." *Marter v. Marter*, 914 So. 2d 743, 746 (¶5) (Miss. 2005) (quoting *Sturgis v. Sturgis,* 792 So. 2d 1020, 2025 (¶19) (Miss. Ct. App. 2001)). "In determining whether a material change of circumstances has occurred, a chancellor should look at 'the overall circumstances in which a child lives.'" *McDonald*, 39 So. 3d at 880 (¶37). "[A] chancellor's failure to make specific findings as to each individual *Albright* factors is reversible error." *Davidson v. Colt*, 899 So. 2d 904, 911 (¶18) (Miss. Ct. App. 2005) (citing *Powell v. Ayars*, 792 So. 2d 240, 249 (¶18) (Miss. 2001)).

8

¶18. Generally, absent a record indicating otherwise, we assume that a chancery court's order was based on adequate evidence. *See Thompson v. Miss. Dep't of Human Servs. ex rel. Surber*, 856 So. 2d 739, 741 (¶8) (Miss. Ct. App. 2003). Additionally, an appellate court "will not reverse a [c]hancery [c]ourt's factual findings, be they of ultimate fact or of evidentiary fact, where there is substantial evidence in the record supporting these findings." *Bryan v. Holzer*, 589 So. 2d 648, 658 (Miss. 1991) (citing *Mullins v. Ratcliff*, 515 So. 2d 1183, 1189 (Miss. 1987)).

¶19. Here, the record reveals that in the modification order, the chancery court completely failed to identify a material change in circumstances warranting modification before finding that it was in Jacob's best interest to grant Scott custody of Jacob. The order simply provides that "it is in the best interest of [Jacob] for [the chancery court] to award permanent physical and legal custody of [Jacob] to [Scott] with [Regina] having visitation as previously set out[.]" The remaining provisions of the order concern child support, financial obligations of Regina and Scott, and behavioral restrictions placed on Regina and Scott. Because the chancery court failed to identify a material change in circumstances warranting custody modification, the modification order is insufficient for us to determine the chancery court's basis for the custody modification. Moreover, the chancery court failed to make specific findings as to each individual *Albright* factor. Accordingly, we reverse the modification order as to the custody modification and remand for further proceedings.

## II. Child Support

¶20. Prior to the entry of the modification order, Scott was obligated to pay $250 per month in child support for Jacob. However, in the modification order, the chancery court

terminated Scott's child-support obligation and imposed child support on Regina, for Jacob, in the amount of $100 per month.

¶21.    We are aware that our law presumes that a noncustodial parent will pay child support. *See generally Brewer v. Holliday,* 135 So. 3d 117, 120-21 (¶14) (Miss. 2014) (finding that "[n]oncustodial parents pay child support to custodial parents for the benefit of the child, not the parent, and that support belongs to the child, not the custodial parent"). However, because we reverse the modification order as to child custody, we pretermit discussion of the chancery court's imposition of child support on Regina, and we reverse the modification order as to child support, pending resolution of the custody-modification issue.

¶22.    **THE JUDGMENT OF THE ITAWAMBA COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR.  BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**