# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00381-COA

**PATRICK W. DECKARD**                                                                 **APPELLANT**

**v.**

**LESA M. DECKARD**                                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/06/2014 |
| TRIAL JUDGE: | HON. VICKI R. BARNES |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL R. BONNER |
| ATTORNEY FOR APPELLEE: | DAVID M. SESSUMS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | HELD FATHER IN CONTEMPT OF COURT |
| DISPOSITION: | AFFIRMED - 06/02/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ISHEE AND CARLTON, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     This case stems from the divorce between Patrick Deckard and Lesa Deckard entered on February 18, 2003.  Lesa filed a complaint for contempt and other relief against Patrick. Patrick replied by filing an answer and cross-complaint for modification.  A trial was held on February 20, 2014, in the Warren County Chancery Court.  The chancellor entered a memorandum opinion and final judgment on March 6, 2014, which included the following: (1) Patrick's request to retroactively abate his child-support obligation was denied; (2) Patrick was found to be in contempt of court for his failure to pay $107,013 in child support, and Lesa was awarded a judgment for that amount against Patrick; (3) Patrick was found to be in contempt of court for his failure to pay $6,038.40 for his children's medical expenses,

and Lesa was awarded a judgment for that amount against Patrick; (4) Patrick was ordered to pay Lesa $500 for her attorney's fees; (5) Patrick was ordered to pay Lesa $800 per month in child support for their sons, Austin Deckard and Sean Deckard, beginning on March 1, 2014, and continuing until they turn twenty-one years of age or are otherwise emancipated; and (6) the prior orders of the Warren County Chancery Court would otherwise remain in effect. Aggrieved, Patrick appeals. Finding no error, we affirm.

## STATEMENT OF FACTS

¶2. Patrick and Lesa were granted a divorce on December 18, 2003, on the ground of irreconcilable differences. They are the parents of three sons: Taylor Deckard, born November 15, 1994, and twins Austin and Sean, born on February 18, 1999. Patrick and Lesa were awarded joint legal custody of Taylor, Austin, and Sean. Lesa was awarded physical custody of the children, with Patrick receiving reasonable visitation rights. Patrick was ordered to pay $1,200 per month in child support and to maintain medical insurance on the children, and the court instructed Patrick and Lesa to equally pay all medical expenses not covered by medical insurance.

¶3. On August 21, 2013, Lesa filed a complaint for contempt and other relief, in which she claimed Patrick owed her $116,381, broken down in the following manner: $106,980 in past-due and unpaid child support; $7,197 in past-due and unreimbursed medical bills; and $2,203.83 in past-due and unreimbursed pharmacy bills. Patrick then filed a cross-complaint for modification, in which he argued that the final judgment of divorce required that all three children be under Lesa's care and control, but that Taylor moved in with his paternal

2

grandparents approximately one month after the divorce. As a result, Patrick requested that the pleadings be retroactively modified to the date that Taylor moved out of Lesa's home. Patrick also asked to retroactively abate the child support to the date of the final judgment of divorce. Finally, Patrick requested that he be given credit for time that Sean lived with him and that Lesa pay Patrick child support for that time period as well.

¶4.    Patrick also alleged that he and Lesa agreed to three extrajudicial agreements modifying the amount of child support he paid. First, Patrick claims that they agreed that after Taylor moved in with his grandparents, child support could be reduced to $800 per month for the twins. Next, Patrick alleges that in March 2006, Lesa agreed to the sum of $600 per month in child support instead of $800 per month because Patrick's new wife was pregnant and on bed rest. Finally, Patrick stated that when Austin and Sean began attending a private school, Patrick and Lesa agreed that he would pay $700 per month in child support, and that the child support would be used for school tuition at the private school, New Summit.

## STANDARD OF REVIEW

¶5.    This Court applies a limited standard of review in domestic-relations cases. *Ladner v. Ladner*, 49 So. 3d 669, 671 (¶7) (Miss. Ct. App. 2010). "An appellate court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous, or [applied] an erroneous legal standard[.]" *Id*. (quoting *In re Dissolution of Marriage of Wood*, 35 So. 3d 507, 512 (¶8) (Miss. 2010)). However, the standard of review is de novo for questions

of law. *Scott v. Scott*, 115 So. 3d 847, 849 (¶6) (Miss. Ct. App. 2012).

## DISCUSSION

### I.      Unjust Enrichment

¶6.      In the judgment of divorce issued by the chancery court on December 18, 2003, Patrick was ordered to pay child support in the amount of $1,200 per month. In the order dated March 6, 2014, Patrick was found to be in contempt for his failure to pay $107,013 in child support from 2005–2014. Patrick argues that the amount claimed is too high because their oldest son, Taylor, moved in with his paternal grandparents soon after the divorce.

¶7.      Patrick asserts that allowing Lesa to collect child support from Patrick for Taylor's benefit would be unjust enrichment because "for all practical intents and purposes he had never been in Lesa Deckard's home and she never expended any monies for child support for his use and benefit." However, the chancellor disagreed and found that Patrick owed the amount ordered by the original agreement to Lesa in unpaid child support. In doing so, the chancellor quoted the following from *Smith v. Smith*, 20 So. 3d 670, 674 (¶¶13-14) (Miss. 2009) (citations omitted):

> The law remains firm that court-ordered child-support payments vest in the child as they accrue and may not thereafter be modified or forgiven, only paid. But this does not mean that equity may not at times suggest ex post facto approval of extra judicial adjustments in the manner and form in which support payments have been made. The noncustodial parent may be entitled to credit for any additional support which he/she has evinced by satisfactory proof to the trial court.
>
> . . . .
>
> In a contempt action concerning past-due child support, when the custodial parent introduces evidence that the noncustodial parent who is required to pay

4

the support has failed to do so, a prima facie case of contempt has been made. At this point, the burden falls on the defending party, to avoid a finding of contempt, to prove that there was payment or other defense, and this proof must be "clear and convincing and rise above a state of doubtfulness."

¶8. The chancellor found that while Taylor was living with Patrick's parents, Patrick did not contribute any money or financial assistance in any manner to his parents for Taylor's benefit. Accordingly, the chancellor found that there was not any evidence before the court that would allow Patrick to receive a credit for any child-support payments.

¶9. Although Patrick cites the case of *Brewer v. Holliday*, 135 So. 3d 117 (Miss. 2014), to support his position, the facts in this case are distinguishable from the facts in *Brewer*. In *Brewer*, the Mississippi Supreme Court reversed the chancellor's finding that a man was not entitled to a credit for the amount of child support he had paid to his ex-wife for the period of time in which their son did not live with her. *Brewer*, 135 So. 3d at 121 (¶16). However, the chancellor only agreed to the credit because the son had been living with his father while his father was still paying the mother child support for him. *Id*.

¶10. In the instant case, Taylor was living with Patrick's parents, and Patrick admits that there is no evidence that he contributed any money to his parents for Taylor's expenses. "Whether or not a non-custodial parent should be given credit against his/her child support obligation[] is a matter left to the sound discretion of the chancellor." *Strack v. Sticklin*, 959 So. 2d 1, 5 (¶14) (Miss. Ct. App. 2006). As such, we agree with the chancery court that Patrick is in contempt for his failure to pay $107,013 in child support.

## II. Extrajudicial Agreements

¶11. Patrick claims that after Taylor moved in with his paternal grandparents, Patrick and

5

Lesa made three extrajudicial agreements regarding the amount of child support he paid each month. First, Patrick states that after Taylor moved in with his grandparents, Patrick and Lesa agreed that they would reduce the amount to $800 per month. Second, Patrick says that he and Lesa later agreed to reduce the amount of child support to $600 per month when Patrick's new wife was pregnant and on bed rest. He claims the third agreement took place when Austin and Sean began attending New Summit, and Patrick claims he and Lesa agreed that he would pay $700 per month, attributable to the private-school tuition.

¶12. Lesa disagrees with Patrick's account. At trial, Lesa testified that she never agreed to $800 per month. Instead, Lesa said that Patrick came to her in 2005 and told her that $600 per month was all he was able to afford. She also points out in her brief that Patrick has failed to produced any evidence of these alleged extrajudicial agreements.

¶13. "No party obligated by a judicial decree to provide support for minor children may resort to self help and modify his or her obligation with impunity." *Crow v. Crow*, 622 So. 2d 1226, 1231 (Miss. 1993) (citation omitted). "A party making an extra-judicial modification does so at his own peril." *Id*. (citation omitted). Because there is no evidence of an extrajudicial agreement, we affirm the chancery court's findings that Patrick is in contempt for $107,013 for unpaid child support.

### III. Attorney's Fees

¶14. At the conclusion of Lesa's brief, she asks this Court to award her attorney's fees of one-half of what was awarded in the chancery court. The chancellor awarded her $500 in attorney's fees, and she is now asking for an additional $250.

¶15. "This Court has generally awarded attorney's fees on appeal in the amount of one-half of what was awarded in the lower court." *Johnson v. Johnson*, 76 So. 3d 781, 788 (¶38) (Miss. Ct. App. 2011) (citation omitted). We find that Lesa's request is well taken and award Lesa $250 in attorney's fees on appeal.

¶16. **THE JUDGMENT OF THE WARREN COUNTY CHANCERY COURT IS AFFIRMED. THE APPELLANT IS ORDERED TO PAY $250 IN ATTORNEY'S FEES ON APPEAL TO THE APPELLEE. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT**.

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.**