# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00173-COA

**DEVEAUX CARTER**

APPELLANT/CROSS-APPELLEE

**v.**

**ALLEN DAVIS**

APPELLEE/CROSS-APPELLANT

| | |
|---|---|
| DATE OF JUDGMENT: | 10/28/2014 |
| TRIAL JUDGE: | HON. G. CHARLES BORDIS IV |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WENDY WALKER BORRIES |
| ATTORNEY FOR APPELLEE: | DAVID C. FRAZIER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | CREDITED APPELLEE FOR ARREARAGES AND AWARDED APPELLANT ATTORNEY'S FEES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART: 04/04/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES, FAIR AND WILSON, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Allen Davis and Deveaux Carter, married on September 22, 1984, were divorced on February 18, 1993, on grounds of irreconcilable differences and with all issues resolved in an agreement for custody, support, and property settlement.

¶2.     By their agreement, approved by the court as "fair, equitable, adequate and sufficient," Deveaux received custody of the parties' two minor children: Annie,[1] born in 1986, and

_____

[1] We use fictitious names to protect the identity of minors.

Amy, born in 1991. Allen was ordered to pay child support, medical expenses, extracurricular activity fees, college expenses, and medical insurance.

¶3. Five years later, in February 1998, they returned to court and, by agreed order, monthly support was set at $400 and a judgment for $22,544.81 was entered for an arrearage of Allen's financial obligations under the original divorce judgment. Allen was ordered to pay no less than $800 per month toward the judgment, together with interest on the judgment and any other future arrearages at 8% per annum. At a scheduled review on April 17, 1998, the arrearage judgment was amended to $23,182.66, and $500 in attorney's fees was ordered to be paid by Allen to Deveaux. An order for Allen to be incarcerated was suspended provided he paid $4,000 on or before June 17, 1998. The required monthly payment toward the arrearage was reduced from $800 to $400.

¶4. Fifteen years later, shortly after their last child became emancipated, on February 25, 2013, Deveaux filed for contempt against Allen for a second time, alleging an arrearage of $23,682.66, accrued interest of $35,599.55, an arrearage of $66,390 for Annie's college expenses and $22,274.55 for Amy's college expenses, medical expenses of $8,588.13 for Annie and $5,115.72 for Amy, half of the cost of the vehicles for each child, attorney's fees, and costs of court.

¶5. The trial began on October 14, 2014, with the parties stipulating Amy's college costs to be $30,000 and Allen's obligation for medical expenses for both children to be $10,000.

¶6. The court determined the remainder of Allen's financial obligations under prior orders

2

of the court to be $201,187.66.[2] Allen was given credit for direct payments to the children as well as amounts given both to Deveaux and the children (even after their emancipation) and the payments from his mother, Isabella Mann. The amount totaled $197,911, leaving an arrearage of $3,276.66, for which a judgment was rendered in favor of Deveaux. Allen was also taxed with $7,500 in attorney's fees and costs by the chancellor.

¶7. Deveaux appeals, arguing she is entitled to more than awarded her by the chancellor. She objects to credit having been allowed to Allen for direct payments to the children both by him and Mann, some of which were post-emancipation.

¶8. Allen cross-appeals, arguing that though adjudicated to be in contempt, he was determined by the chancellor not to be in "willful and intentional" contempt and thus not obligated to pay fees to Deveaux for pursuing his arrearages in payment of support.

¶9. Neither Deveaux nor Allen questions the chancellor's mathematical determinations in adjudicating Allen's arrearage.

## STANDARD OF REVIEW

¶10. Our review in domestic-relations cases is limited. *In re Dissolution of Marriage of Wood*, 35 So. 3d 507, 512 (¶8) (Miss. 2010). "An appellate court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous, or [applied] an erroneous legal

---

[2] The amount included $3,120 for insurance on the children, $3,000 toward Amy's car, Annie's college expense of $49,810, interest of $11,175, and the most recent prior judgment for arrearages in the amount of $23,682.66.

standard[.]" *Ladner v. Ladner*, 49 So. 3d 669, 671 (¶7) (Miss. Ct. App. 2010) (quoting *Wood*, 35 So. 3d at 512 (¶8)). We review questions of law de novo. *Scott v. Scott*, 115 So. 3d 847, 849 (¶6) (Miss. Ct. App. 2012).

## DISCUSSION

### 1. Mann's Payments

¶11. Deveaux first argues that the chancellor erred in including Mann's payments as part of Allen's paid child support. More specifically, she relies on *Mizell v. Mizell*, 708 So. 2d 55 (Miss. 1998), arguing that a grandparent's payments should not offset a noncustodial parent's payments. In *Mizell*, the paternal grandfather made payments to the minor child out of a joint depository account that named them both as account holders. *Mizell*, 708 So. 2d at 60. Our supreme court found that those payments could not be credited as child support. But, as this Court explained two years later, *Mizell* was "fact specific" and does not broadly prohibit grandparents from making child support contributions and having those contributions count toward arrearages. *See Johnston v. Parham*, 758 So. 2d 443, 446 (¶7) (Miss. Ct. App. 2000). Rather, the money in *Mizell* already belonged to the minor child and could not be considered child support. *Id.* Here, the grandparent contributed her own money to the children.

¶12. Deveaux also claims that Mann restricted her payments to dance lessons – a separate arrangement not included in Allen's child support.[3] At trial, Deveaux testified to the same

---

[3] In the 1993 judgment, Deveaux and Allen agreed to share any future expenses for lessons.

4

effect. Mann testified, however, that she would not have contributed the money if Allen had been able to do so himself. She made these payments in lieu of Allen's child support. The chancellor ultimately found that Mann's payments were for unrestricted use. "Whether or not a non-custodial parent should be given credit against his/her child support obligation is a matter left to the sound discretion of the chancellor." *Deckard v. Deckard*, 165 So. 3d 533, 536 (¶10) (Miss. Ct. App. 2015) (quoting *Strack v. Sticklin*, 959 So. 2d 1, 5 (¶14) (Miss. Ct. App. 2006)). After review of the record, we find no abuse of discretion in the chancellor's decision to include Mann's payments as paid toward Allen's child support obligations.

### 2. Allen's Direct Payments to Children

¶13. Deveaux next argues that the chancellor committed reversible error by crediting Allen with payments made directly by him to the children while they were attending college. Again, whether certain payments should be credited against child support arrearage remains within the chancellor's discretion. *See Crow v. Crow*, 622 So. 2d 1226, 1231 (Miss. 1993). A noncustodial parent may "receive credit for having paid child support where, in fact, he paid the support directly to or for the benefit of the child, where to hold otherwise would unjustly enrich the mother." *Id.* (quotation omitted). This principle only applies when the father proves by a preponderance of the evidence that he has paid the support to the child under circumstances contemplated by the support order, such as shelter, food, clothing, and other necessities for the child. *Nichols v. Tedder*, 547 So. 2d 766, 769 (Miss. 1989).

¶14. The chancellor found that Allen and his mother had paid for everything. He further

determined that Allen made these payments directly to the children as child support. The chancellor also found that Deveaux would be unjustly enriched if Allen was required to make payments directly to her. We find no abuse of discretion in these determinations.

### 3. Contempt and Attorney's Fees

¶15. On cross-appeal, Allen argues that the chancellor erroneously ordered him to pay attorney's fees because the chancellor failed to find him in "willful" contempt. "To be found in contempt, a party has to willfully and deliberately violate a court order." *McKnight v. Jenkins*, 155 So. 3d 730, 732 (¶7) (Miss. 2013) (citing *R.K. v. J.K.*, 946 So. 2d 764, 778 (¶41) (Miss. 2007)). Here, the chancellor held that Deveaux was entitled to attorney's fees because she was forced to initiate proceedings. However, he also stated that Allen was not in willful contempt, since he was credited for payments made since 1998. The chancellor's finding is supported by the record. Because Allen was not found to be in willful contempt, we reverse and render the award of attorney's fees of $7,500 to Deveaux.

### 4. Deveaux's Request for Attorney's Fees on Appeal

¶16. At the end of her brief, Deveaux requests that her attorney's fees be paid on appeal, under Mississippi Rule of Appellate Procedure 38. Rule 38 states that "[i]n a civil case if the Supreme Court or Court of Appeals shall determine that an appeal is frivolous, it shall award just damages and single or double costs to the appellee." M.R.A.P. 38. As the appellant, Deveaux's reliance on Rule 38 is unfounded.

¶17. Deveaux alternatively asks that she be awarded $4,783 – one half of the amount

awarded in the lower court, plus costs. "This Court has generally awarded attorney's fees on appeal in the amount of one-half of what was awarded in the lower court." *Lauro v. Lauro*, 924 So. 2d 584, 592 (¶33) (Miss. Ct. App. 2006). Because we reverse the chancellor's award of attorney's fees at trial, we deny Deveaux's request for attorney's fees on appeal.

¶18.   **THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT/CROSS-APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**